UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT

This document relates to:

*Hill v. Wyeth,* C03-3780

Defendant Wyeth, on behalf of itself and its former entity Wyeth-Ayerst Laboratories Company (collectively "Wyeth"), has filed a motion for summary judgment based on this court's June 18, 2003 *Daubert* ruling. Defendant asserts that the plaintiff Kathy Hill will be unable to establish that her minor son Michael ingested any Wyeth PPA-containing product within 72 hours of his injury, an essential element of her case. *See* June 18, 2003 Order Granting in Part and Denying in Part MDL Defendants' Motion to Preclude Plaintiffs' Expert Opinions as to General Causation; May 5, 2004 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment.

According to the complaint and to plaintiff's fact sheet, Michael Hill, who was seven years old at the time, was admitted to the hospital on April 20, 1996, complaining of headache,

ORDER
Page - 1 -

1  difficulties moving the left side of his face, numbness and
2  speech problems. Plaintiff further alleges that Michael was given
3  liquid Robitussin and "Dimetapp/Allergy-liquid," both products
4  associated with Wyeth, on April 19, 1996 and the morning of April
5  20, 1996, respectively. None of the deponents, however, were able
6  to identify with any certainty the exact type of Robitussin or
7  Dimetapp medication administered to Michael within 72 hours of
8  his injuries. Michael remembers nothing. Mrs. Hill unequivocally
9  testified that the medication was liquid in form, but does not
10 remember the color, flavor, ingredients, or exact name or type of
11 the medication. And Mr. Hill has no personal knowledge of the
12 type of medicine his son ingested, or of the medicine his wife
13 may have administered to the child. According to testimony,
14 plaintiff also did not retain any leftover medicine, or any of
15 the labels or boxes in which the medicine was purchased.
16     Wyeth asserts that during the time in question, it was
17 responsible for a number of forms of liquid Robitussin – such as
18 Robitussin, Robitussin-CF, Robitussin-DM, Robitussin-PE,
19 Robitussin Maximum Strength Cough Suppressant, and a number of
20 others – only one of which contained PPA. Wyeth makes a similar
21 claim as to its Dimetapp product, although judging from the
22 Physicians' Desk Reference excerpt submitted into evidence, there
23 were far fewer varieties of Dimetapp, and the liquid forms listed
24 (Dimetapp Elixir and Dimetapp DM-Elixir) did in fact contain PPA.
25     In response plaintiff argues that unequivocal testimony
26 establishes that Michael ingested a liquid form of Robitussin and

ORDER
Page – 2 –

Dimetapp, with a small and large probability, respectively, that the medications contained PPA. Plaintiff further argues that given that Michael was an otherwise healthy seven-year-old boy, a jury might reasonably conclude that the medications in question did in fact contain PPA, causing his injuries.

The court agrees. Especially as plaintiff's claims concern Dimetapp, a jury might reasonably conclude that the testimony, combined with other circumstances of the case, establish a mathematical probability that the liquid Dimetapp Mrs. Hill gave her son contained PPA. While the evidence relating to Robitussin is less convincing, a jury might also conclude that given the boy's age and health, it was more likely than not that Mrs. Hill gave her son a Robitussin containing PPA. Wyeth's motion for summary judgment is therefore DENIED.

DATED at Seattle, Washington this 14th day of December, 2005.

*Barbara J. Rothstein*

UNITED STATES DISTRICT JUDGE